**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA BELL, | : | **Civil Action No.** |
|     **Plaintiff,** | : | |
| | : | |
|   v. | : | **Complaint and Jury Demand** |
| | : | |
| **BAYADA HOME HEALTH CARE,** | : | |
| **INC.,** | : | |
|     **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Amanda Bell (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against BAYADA Home Health Care, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Coatesville, PA.

3. Upon information and belief, BAYADA Home Health Care, Inc. is a home healthcare provider with a location at 600 Willowbrook Lane, Suite 618, West Chester, PA 19382 and corporate headquarters located at 4300 Haddonfield Road, Suite 110, Pennsauken, NJ 08109.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## **JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

13. On or about October 24, 2023, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant.

14. The Charge was assigned a Charge Number 530-2023-05849 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated April 17, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one year after filing, but within two (2) years of the issuance of the Right to Sue in this matter, as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

3

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about October 18, 2021, Defendant hired Plaintiff in the position of Client Service Manager ("CSM").

21. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF IS DISABLED AND NOTIFIED DEFENDANT

22. Plaintiff has the serious health condition of bipolar disorder which is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

23. The major life activities affected by bipolar disorder include, but are not limited to, thinking, concentrating, sleeping, regulating mood and emotions and neurological and brain function.

24. In or around December, Plaintiff informed Stephanie Ingalsbe, Area Director, of her disability.

### PLAINTIFF EXPERIENCED AN EPISODE AND WAS PLACED ON A BRIEF MEDICAL LEAVE OF ABSENCE

25. On or about June 9, 2022, Plaintiff experienced a bipolar episode while at or near Defendant's office.

26. On or about June 13, 2022, Plaintiff returned to work after her physician adjusted her medication.

4

## A SAFETY PLAN WAS CREATED SHOULD PLAINTIFF EXPERIENCE AN EPIOSDE AT WORK IN THE FUTURE

27. Upon her return to work, Plaintiff met with Ingalsbe and Jason Green, Program Manager, and together they developed a plan to ensure Plaintiff's safety in the event she experienced another bipolar episode at or near Defendant's workplace (the "Safety Plan").

28. Under the Safety Plan, a designated point person would assist in guiding Plaintiff to a private area, contact Plaintiff's emergency contacts, namely her father and her daughter, and remain with Plaintiff until an emergency contact arrived to transport Plaintiff home.

29. Green was designated as the point person under the Safety Plan.

30. Ingalsbe helped to create the Safety Plan and was fully aware of its terms.

## INGALSBE ACCUSED PLAINTIFF OF BEING OVERLY EMOTIONAL AND MANDATED THAT SHE MEET WITH A MANAGER TO ADDRESS THESE FALSE CLAIMS

31. After Plaintiff disclosed her bipolar disorder, Ingalsbe repeatedly criticized Plaintiff for purportedly having overly emotional responses and instructed Plaintiff to act, in Ingalsbe's words, "fluffy like", or words to that effect.

32. When Plaintiff asked Ingalsbe to identify any specific instance in which she had responded in an overly emotional manner, Ingalsbe was unable to provide any example.

33. Despite the absence of any example, Ingalsbe required Plaintiff to meet with Ashley Darnley, Manager, to address Plaintiff's purported emotional responses.

34. No other employee of Defendant was required to attend such additional mentoring.

## DEFENDANT PROMISED TO PROMOTE PLAINTIFF

35. In or around November 2022, Darnley and Ingalsbe met with Plaintiff to discuss a promotion to the position of CSM II.

5

36. Darnley and Ingalsbe informed Plaintiff that she would be promoted to CSM II if she completed three (3) goals: learning the office finances, resolving the office's outstanding debts, and improving her purported emotional reactions.

37. In January 2023, Plaintiff received an excellent annual performance evaluation and had completed her promotional tasks apart from the office's financial functions which Ingalsbe was assigned to train her on.

38. Notwithstanding Plaintiff's progress, Defendant denied Plaintiff the promotion and again attributed the denial to Plaintiff's purported emotional reactions, without identifying any specific example.

39. By April 2023, Defendant tied the promotion to Plaintiff's remote creation of CSM processes for Defendant's Ohio office.

40. Plaintiff accepted the Ohio assignment on the conditions that it would help expedite her promotion and that she could request a break to provide assistance to her home office regarding her job and/or promotional duties without affecting her promotion.

41. Although Defendant permitted Plaintiff a temporary leave from the Ohio project, Ingalsbe conditioned that leave on a representation that it would delay Plaintiff's promotion by one (1) year.

**IGNALSBE REMOVED PLAINTIFF FROM THE PROMOTION TRACK**

42. On or about May 25, 2023, Ingalsbe invited a newly added team member to review the quarterly financials, a task Plaintiff had been performing since November 2022.

43. Ingalsbe denied Plaintiff the opportunity to perform the very tasks for which Plaintiff had been training in order to obtain the promotion.

6

44. Plaintiff thereby realized that Ingalsbe had removed her from the promotion track that she had been on since November 2022.

## PLAINTIFF SUFFERED AN EPISODE AT WORK, BUT INGALSBE PREVENTED THE SAFETY PLAN FROM BEING FOLLOWED

45. As a result, Plaintiff was triggered into an emotional episode related to her disability.

46. Recognizing the onset of the episode, Plaintiff went to her vehicle to practice the coping mechanisms she had developed in connection with the Safety Plan.

47. Ingalsbe breached the Safety Plan and denied Plaintiff access to safe coping mechanisms.

48. By this time, Green, the designated point person, had left Defendant's employ and had been replaced by Dalton Hunt, Rehabilitation Manager.

49. Hunt had never been informed of the emergency contact information necessary to carry out the Safety Plan.

50. Hunt offered Plaintiff support to the best of his ability.

51. However, when Hunt requested that Plaintiff's friend/coworker assist Plaintiff with coping skills and/or driver her home safely, Ingalsbe stopped him and all others from providing Plaintiff with assistance.

52. At no point did Ingalsbe contact Plaintiff's emergency contacts as required by the Safety Plan.

53. Plaintiff drove to a nearby parking lot, called Defendant's emergency counseling hotline, and waited until it was safe for her to drive home.

**<u>INGALSBE INSTRUCTED PLAINTIFF TO NOT REPORT HER CONCERNS</u>**

54. In or around the middle of May 2023, Plaintiff raised concerns with another supervisor regarding her inability to take paid-time off ("PTO") without being expected and directed by Ingalsbe to work remotely, despite her not allowing remote work at other times.

55. Plaintiff explained that the situation was exacerbating her anxiety and stress.

56. Ingalsbe thereafter directed Plaintiff to call her that evening to speak "off the record."

57. During that conversation, Ingalsbe instructed Plaintiff not to raise problems with anyone else in the organization because others did not understand Plaintiff's emotional reactions due to her bipolar disorder, or words to that effect.

**<u>PLAINTIFF REQUESTED A REASONABLE ACCOMMODATION</u>**

58. On or about June 2, 2023, Plaintiff provided Defendant with a physician's note stating that working with her supervisor had worsened her anxiety, depression, and panic attacks.

59. The physician's note indicated that Plaintiff could return to work on or about June 12, 2023, provided that she did not have to interact with her current supervisor, and that she was in therapy and adjusting her medication to improve her symptoms.

60. Plaintiff contacted Tiffany LaTorre, Divisional Director, to inform her that Plaintiff's physician had requested that Plaintiff no longer work under Ingalsbe for Plaintiff's safety.

61. The accommodation Plaintiff sought, namely reassignment away from Ingalsbe without a reduction in pay or an unworkable schedule, was reasonable and would not have imposed an undue hardship on Defendant.

**<u>DEFENDANT REFUSED TO ACCOMMODATE PLAINTIFF</u>**

62. In response to Plaintiff's request, Defendant offered Plaintiff three options.

63. The first option was for Plaintiff to continue working under the same conditions as before, including under Ingalsbe.

64. The second option was for Plaintiff to relocate to the office where Green then worked, which would have decreased Plaintiff's pay and roughly tripled her commute.

65. The third option was for Plaintiff to work in pediatrics, but the position did not have a job title, salary or job description finalized, and would have required Plaintiff to remain under Ingalsbe's supervision.

66. The second and third options each would have required Plaintiff to work from home approximately one hour each night.

67. As a single mother responsible for the care of her children, Plaintiff was unable to accept either the second or third option.

68. Defendant failed to engage in a good faith effort to identify a reasonable accommodation for Plaintiff's disability and instead required Plaintiff either to continue working under the conditions that had caused her harm or to accept a reduction in pay together with a schedule that did not accommodate her family obligations.

69. Defendant subjected Plaintiff to working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

### **PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED**

70. On or about June 25, 2023, Plaintiff was forced to resign her employment with Defendant.

71. Plaintiff was constructively discharged.

72. Defendant discriminated against Plaintiff due to her disability in violation of the ADA and the PHRA.

9

73. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

## COUNT I – DISABILITY DISCRIMINATION
## <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

76. Plaintiff was qualified to perform the job.

77. Plaintiff was subject to an adverse employment action, including, but not limited to constructive discharge.

78. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

79. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

80. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

81. The purported reason for Defendant's decision is pretextual.

82. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

83. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

84. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

85. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

88. Plaintiff was qualified to perform the job.

89. Plaintiff was subject to an adverse employment action, including, but not limited to constructive discharge.

90. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

91. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

92. Plaintiff's disability motivated Defendant's decision to constructively discharge Plaintiff.

93. The purported reason for Defendant's decision is pretextual.

94. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

95. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

96. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Amanda Bell, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b) Compensatory damages for, *inter alia*, mental anguish, humiliation, and emotional pain and suffering as well as any other expenses incurred by Plaintiff due to Defendant's unlawful employment practices;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which

12

provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: July 16, 2026          **By:   */s/David M. Koller*__**
David M. Koller, Esquire (Pa 90119)
Jordan D. Santo, Esquire (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

13